Today is 2017-11490, United States v. Ignacio Arellano-Banuelos. May it please the Court, my name is Brandon Beck and I represent Ignacio Arellano-Banuelos, the appellant here today. In my limited time before the Court, I'd like to address the two most salient errors below. The first regards Miranda. The second regards the Confrontation Clause. These two errors, when remedied, combine to prevent the government from establishing one of the essential elements of its indictment, namely that Mr. Arellano-Banuelos entered the United States without the consent of the Attorney General. To my first point, Your Honors, the District Court erred when it introduced the fruits of ICE Agent Cruz's jail interview, which was performed in violation of the guarantees of Miranda. Miranda v. Arizona requires an interviewing officer to advise a suspect of a series of his constitutional rights at the beginning of any custodial interrogation. Otherwise, the fruits of the interview are inadmissible at trial. The Supreme Court defined custody for Miranda purposes in Stansbury v. California to mean restraint on freedom of movement to the degree associated with a formal arrest. The Supreme Court defined interrogation for Miranda purposes in Rhode Island to mean words or actions taken on the part of police officers that they should have reasonably known would elicit an incriminating response. Counsel, what would it have taken? What is the missing piece under Miranda that your client did not have the benefit of? Miranda generally serves as a prohibition against statements that are compelled by a person in custody. So what, as I understand the testimony of the agent himself, it was explained that the defendant could get up and leave. He did not have to answer questions. And I'm paraphrasing the testimony. What is it that's the missing piece that would have been in compliance? Your Honor, Miranda protects both the defendant's Fifth Amendment and Sixth Amendment rights. So the missing piece here is the same missing piece that we saw in Miranda v. Arizona, which is him being informed of his right to counsel, to be present at the time of any custodial interrogation. Your Honor, getting to custody here, before I describe kind of the circumstances that I think make this interview custodial, I'd like to point out that in the briefing before the district court, the government didn't challenge the custodial status of this interview. Also, if we look to page 411, the judge found that he was in custody. Okay, so you believe the custody issue is not on the table? Well, it's certainly on the table, but to reinforce my perspective as to custody, both the district court and, at least at the time, the government were in agreement that this was custodial. Because it seems that there's some with Howes v. Field, whether this was actually in custody. Your Honor, I disagree with that. Well, help me. Yes, Your Honor. The holding of Howes v. Field before the Supreme Court was that prison itself is not per se custodial. But that doesn't mean that a person in prison can never be in custody for Miranda purposes. In fact, we saw in Mathis v. United States, also before the Supreme Court, a case where a person was in prison and interviewed just as here and was found to be in custody and interrogated for purposes of Miranda. So we look not just to the fact that they were in prison, although I think that points, that's a factor, that's an indication of custody. Certainly, it's not per se. We look for additional evidence of restraint beyond mere imprisonment. Right, he didn't have handcuffs. Didn't have handcuffs, that's correct, Your Honor. And he was told he could leave at any time and didn't have to answer the questions. And it was a short duration. These are the factors. Location of questioning, duration, statements made, presence or absence of physical restraints, and release or not release at the end of questioning. Aren't those in Howes v. Field's factors? Those are the factors described in Howes v. Field. Can you go through each one? Is there one particular one that's different? Well, there's a few facts in this case, all of which go to those factors in varying degrees that I think establish a degree of restraint that is tantamount to that of formal arrest, and certainly more so than we would see in the general prison population. The facts I'm referring to are in the record on pages 362 to 365 of the record. And these are what's being discussed by Agent Cruz primarily on direct examination. What Agent Cruz describes is that Mr. Arellano-Bonuelos was taken out of the general population and moved to what's described as a small room about the size of a jury box. He was escorted there by prison guards who stood watch during the interview. He was placed across the table from Agent Cruz and appears to be another ICE officer, and he was asked a series of questions, all of which were about his immigration status and his legality here. These circumstances are what we would envision when we see a station house interview. Wait. Refresh my memory. Something you just said. He was asked about his immigration status and his legality of being here. I thought the questions, in my recollection, and I could be wrong, but the questions that Agent Cruz asked him were fact questions about where he was born, what citizenship. And of course, your argument is that those questions themselves form the basis of the elements of the crime. But he wasn't asked about, or was he asked about, legality. Are you here illegally? Have you reentered the United States without the consent of the Department of Homeland Security? He was asked fact questions, wasn't he? Yeah. To be clear, he was not asked to provide legal conclusions. Instead, what he was asked, and we can see what he was asked, by the way, pages 93, I believe, to 97, which is this document that Agent Cruz filled out. If you look at the document, one of the questions was, did you receive the consent of the Attorney General to be here? And it's one of the two places in this case where that evidence actually came in. The case, I think, that's most closely resembling this case is Mathis v. United States before the Supreme Court. There, a person was in jail on another state offense. Person was approached and interviewed, in that case, by an IRS agent, asked a series of questions about tax fraud, was not Mirandized, and was subsequently prosecuted. What the Supreme Court said, it reversed and remanded, saying that this person should have received Miranda warnings prior to this, because they were in custody at the time of the interview, and that line of questions was an interrogation. One of the facts that the court relied on is that tax fraud, although it can be administrative, often leads to criminal prosecution. One of the things I discussed in the briefing here today is that illegal re-entry, of course, is one of the most commonly prosecuted. Mathis points more towards what's interrogation, so we do have two prongs, correct? That's absolutely right. Here, my read of the record is that the government not only didn't challenge custody, they elicited that he was in custody, and then you have a district court finding, which explains why they haven't pressed any objection to custody. My focus has always been interrogation, but here's the question. Let's say they didn't challenge custody. We could still affirm on lack of custody, if we look at the record and think that... Is that correct? That's correct, Your Honor. So then, on custody, it does look like it's less custodial if you have multiple people all sitting there answering the same administrative type questions. Your Honor, I'd like to respond in two ways. First, I would characterize these questions as criminal in nature, but second, the fact that you have two officers across the table or the fact that it's a multi-use room, I don't think changes the analysis, and I don't know where I would find authority for that. Okay, my only other question on custody, if we were to revisit that, is was your client ever told he was free to leave the room, as opposed to advise, you don't have to speak to me? Your Honor, I'd have to look back at the transcript. My recollection is he was told, you do not have to answer these questions. Right, that's what I thought. That was the same thing Mr. Miranda was told in Miranda v. Arizona. It seems crucial whether a person is told they can go back to general population that we're saying is not custodial. They have to be told you can leave this room, and I didn't see that that fact was ever established. And I'd like to point this court to United States v. Lugo, which is the case the district court found as its primary authority for reaching its own conclusion. United States v. Lugo, Southern District of Texas, there was custody under an identical situation, although the court found there was not interrogation. And if we're focused on interrogation because of the unusual way facts were developed here, and the government's clear focus was interrogation, and as I read the district court's ruling, its focus was this conclusion that this Mr. Cruz didn't have the subjective intent to elicit criminal. So that's to me a Mathis interrogation question. Well, that's a Stansbury v. California question. Okay. The Supreme Court said in no uncertain terms, the officer's subjective intent is absolutely irrelevant, even if the officer doesn't believe the person's a suspect. Therefore, my question, though, is we know that thousands of these go on. Cruz said that. And he never gives Miranda rights. So is the federal defender's position here, what's your limiting principle? Are you saying that all over the country, all of these have been done in violation of the Constitution? No, Your Honor. In these types of circumstances, yes. But there is a routine booking exception that the district court below adopted that's also from the Ninth Circuit. That is the exception here. This is not routine booking. He had already been booked, incarcerated, etc. And if you look at Salgado, which is a case the government relies on, there, the defendant was trying to suppress the routine booking questions. But the corollary to Agent Cruz in that case actually did give him Miranda warnings. But the problem with that is, any time an alien has illegally reentered already, so 1326 has already happened, routine booking will largely confirm the crime. But it usually will not be custodial. Ah, that's what I thought. So your limiting principle is these are rarely going to be custodial. That's your limiting principle, isn't it? They're rarely custodial. And in routine booking, typically the questions you'll be asked, what is your name? Where were you born? You're not typically going to be asked, did you receive the permission of the Attorney General to be here? That's the questions asked by the criminal alien program of which Agent Cruz was a member. But Cruz says he's never testified in criminal court. Your Honor, his direct supervisor is the one that referred to this for prosecution. He was a member of the unit, which is trusted, entrusted with the prosecution of criminal aliens. And he certainly said he was familiar with the crime of 1326. Last question, your limiting principle then is not normally custodial. What would have made this not custodial? Would it have just been, and you can go back to general population, would that in your mind, would you agree that then the law would suggest, yes? If the circumstances made it clear. Not circumstances. Would it just be had they said, not only you don't have to talk to us, but you can get up and leave. And there will be no consequences for you doing so. And United States versus Lugo describes the consequences if a person refuses to answer these types of questions. And that's one of the reasons the court found it to be custodial. So I do want to comment on my second point, your Honor. Second, the district court erred when it admitted the certificate of non-existence without the defense having an opportunity to cross-examine the clerk who actually searched the databases. Melendez Diaz versus Massachusetts before the Supreme Court. United States versus Martinez-Rios before this court. Both have held that a certificate of non-existence is a testimonial statement for purposes of the confrontation clause. Here, the testimonial statement, the certificate of non-existence, actually had two witnesses. One that was sworn, Agent Priscilla Dobbins, Officer Priscilla Dobbins. And one that was unsworn, who is the third party that Ms. Dobbins delegated part of the task of searching the CIS databases to see if Mr. Arellano-Bonuelos had submitted Form I-212, which is seeking the consent of the Attorney General. But if the second person is doing it at the direction of a supervisory, someone in a supervisory role, are you saying that, and in this case, it's fairly simple because I think my understanding is we only have two people involved in this search, one of whom testified. But if there's a search for a non-existence of something and it involves 20 people searching in various sources or potential sources of information, is your position that they would have to put on the witness stand all 20 people to describe each little segment of research that he or she did? Presiding Judge, I see I'm running low on time. May I answer the judge's question? Certainly. Your Honor, footnote one of Melendez-Diaz, which I'm sure the government will want to talk about, says that the government gets to decide what evidence and what proof and what claims it wants to make at trial. If it decides to put on evidence that's the work product of 20 people, all of which is prepared specifically for trial, making it testimonial, the answer is yes, they have to do that. If we look at the history of modern Confrontation Clause cases, Crawford, Melendez-Diaz, Bull Cumming, it's the Supreme Court pushing back on prosecutors trying to cut corners with purposes of Confrontation Clause. That's exactly what happened here. Thank you, Your Honor. Can you address whether or not it would be harmless error under the circumstances of this case if it were error? Yes, Your Honor. You know, would not have altered the outcome in the case. So maybe, I don't know if we want to do it under prong three, actually, rather than harmlessness, because we're under the plain error standard. You're correct, Your Honor. And if we look at Martinez-Rios, it seemed to conflate harmlessness and third prong. So it's a very similar analysis. Here, if we look to the closing argument made by the government, it's on page 642 of the record. The only evidence that the government argued at closing for the lack of permission, which is an essential element of the government's burden, was Priscilla Dobbin's Certificate of Non-Existence. This was admitted without the possibility of cross-examining the person who searched the databases. So, yes, without the Miranda violation, without the Confrontation Clause violation, the government would not have evidence on an essential element of its cause of action. Certainly calling into question the outcome of the case. Okay, what if the Miranda stays in? Is the analysis different? The analysis is different, Your Honor, yes. One of the things that Agent Cruz elicited in this interview is that he did not, in admission, that he did not receive the permission. So we would have to win on the Miranda issue. Right, so you have to win on both to win on this point. Your Honor, there's a couple ways of looking at it. So you don't need this point, really? Because if you win on the other one, you win, don't you? Because they didn't even argue harmless. I think we win if we win on Miranda because of the circumstances, at least, of this Confrontation Clause issue. I don't think it can be used to say that the Miranda violation is harmless. Thank you. Thank you, Your Honor. May it please the Court, Rebecca Ricketts for the government. This Court should affirm the District Court's holding on Miranda for two reasons. First, the defendant was not in custody for purposes of Miranda. And second, the defendant was not subject to custodial interrogation. As a factual matter, did the officer say you can leave or not? In terms of the actual warnings that were given, Your Honor, I believe the record reflects that he was told he has the right to refuse to answer any questions, that any statement must be freely and voluntarily given, and that any statement may be used against him. He was not expressly told that he could leave. Thank you. In answer to Judge Higginson's earlier question, can this Court reach the custody issue? Yes, Your Honor, we believe they can. The context of the remark that's made below by Officer Cruz and the context of the District Court's statement both clearly refer to the fact that the defendant was incarcerated, which, of course, under House is not dispositive of the custodial inquiry. Well, your office elicited that statement, and it was right after close description of the room he was in. So the question Mr. Bull and the other inmates are all definitely in custody, correct? Yes, that's after you elicited how small the room was, details of the room. It doesn't sound like it's, oh, well, yeah, we are in a jail. Your Honor's absolutely right that there is testimony on this issue, and in fact, if you look at ROA 364, the statement read in full, there's no doubt they're not free to leave, correct? I mean, as far as walking out of the jail, they are in custody of the jail, correct? That's the follow-up question. That wasn't the limitation on the first one, the one I just read. I believe that's the context of the entire exchange, Your Honor. But you agree the context was also right after the description of the room? I do, Your Honor. And furthermore, I guess, the two other fact questions are the District Court seemed the ultimate finding of fact that's relevant here, which is why it looked to me you never pressed and denied custody, was certainly as a factual matter, the defendant was custody, meaning he couldn't get up and walk out. Your Honor, and in the context of incarceration, that's absolutely right. I think that last clause, meaning he could not get up and walk out, certainly indicates that the focus of that exchange is all about incarceration. We know under Schatzer and Howes, that's the end of the inquiry. But if it's ambiguous... That's not the end of the inquiry. I apologize, Your Honor. If it's ambiguous and you didn't press this point below, is it appropriate for us to disturb it now? It absolutely is, Your Honor, for a couple of reasons. Number one, it's clearly the province of this court not of any fact witness to determine what constitutes custody for purposes of Miranda. And in any event, this court can obviously affirm on any basis that's supported in the record. This court has characterized that as an elementary proposition with cases too numerous to cite that any basis supported by the record can support a judgment below. But it's an objective test. Would a reasonable person feel they can leave? District Court didn't make any of the findings relevant to that. You elicit contrary findings. The district court makes a finding of fact opposite. You don't press it. And you're asking us to just still look at the record and say, well, this man in that setting, that room would have thought, in spite of not being told he could walk out, he could have walked out. That's what you're asking us to do? Respectfully, Your Honor, I don't think the district court made a finding of custody for purposes of Miranda. That's not what the statement says. He couldn't get up and walk out. Did the district court say that? Meaning he could not get up and walk out of the jail. Absolutely, he could not get up and walk out of the jail. But you also just said as your first answer today that he was never even told he could get up and walk out of the room. And the court makes a finding couldn't get up to walk around. You're asking us to edit that and say, but that meant people can't get up and just walk out of jail, which I'd be surprised if the court felt they had to make a finding of fact that prisoners cannot know they can't get out of the jail. It seems so focused by you and the court that he couldn't get out of that room. Your Honor, I think if we compare the facts of this case to the facts of Howe's, it becomes clear that this case is actually far easier than Howe's. Howe's was told you can walk out of the room. That's correct, Your Honor. Howe's was also questioned for five to seven hours by deputies who were armed. He said several times he no longer wanted to talk. For my arguments, let's assume he was in custody because that didn't seem to be contested. It's fact-specific. It's objective in the person who's being interrogated. The district court said, here's why I'm not suppressing. I find Officer Cruz's subjective motivation was purely administrative. It focused on interrogation. Would you agree that's a misstatement of law? It is not what the purpose of the interrogation. No, Your Honor, because if you go on to the end of the court's ruling at 409 to 411, the court doesn't stop with that subjective determination. He goes on to find that the purpose of the screening interview generally is administrative. That the screeners are there in an administrative capacity. That at the time of the interview, it was strictly an administrative process. That's still purpose. But the test under Mathis is, would the officer know that the words and actions could lead to incriminating answers? And the answer that the district court clearly gives here is no. He's not limiting the holding to a subjective determination. Did he have to say that it was subjective too? No, he did not. I'm in the criminal alien section and I know the sworn statement I've listed could go to a criminal referral. Isn't that exactly Mathis? Tax person's in there. Court says that's an interrogation if there's a possibility. No, Your Honor, there's a couple important distinctions between this case and Mathis. If we go straight to that. Mathis involved an IRS investigation where criminal prosecution of the defendant was a likely outcome. That's how the Second Circuit in Rodriguez says. Where does the Supreme Court say likely outcome? I thought the Supreme Court said possibility. Your Honor, you're right. That's a characterization by the Second Circuit of Mathis. Did the Supreme Court use possibility? It did, Your Honor. Notably also in Mathis, the timeline of events here, I think is very indicative and supports the fact that there was no custodial interrogation here. The last visit to the jail in Mathis was eight days before a full-fledged criminal investigation was launched. Similarly, in Mata-Villabundis, which is the case that precedes Salgado in the Ninth Circuit, there was an interview and three hours later, the investigator returns with a warrant. That's against the government's argument here. This man has committed every single element of 1326. Cruz gets on the stand and he says, I assembled all the documents corresponding to each element. I asked him every single question relating to every element. We got a sworn sign affidavit. I'm in the criminal section. I know it's going to go to my supervisor and I know he can refer it. So my question to you, if in that fact, is the government's position that in any 1326 prosecution, the government can call the ICE agent that just runs for the booking, doesn't have to Mirandize, the government's only witness is, this guy confessed when we did the booking test? No, Your Honor. The government's position, as every court that I think has looked at this issue, is that it is a fact-specific analysis. We have to look at the context of the specific interview that's at issue. And the record here is that Agent Cruz says he conducts these interviews at the state jail once a week, every Tuesday. His only goal is to determine whether an inmate can be deported. But it's not what his goal is. That was what the district court held. And I think that's legal error. It is what would an officer believe would be reasonably likely to elicit. It's not his purpose or goal. That was the tax investigator. The tax was, it was there to elicit questions on a tax case. But there was a possibility of a criminal prosecution. Your Honor, we have no disagreement about the fact that it's an objective inquiry. And we think the district court got it absolutely right. The district court made both subjective and objective findings. It did not need to make the subjective findings in addition to the objective findings. But it did. It went above and beyond the standard that it needed to do in order to demonstrate that this was not custodial interrogation. But to go to Your Honor's, I think the thrust of Your Honor's point, is this a pretext? Is the government engaged in some sort of conspiracy to put the arm of the U.S. Attorney's Office into these screening interviews? No, Your Honor. That's not what this record reflects. The timeline at issue here, this screening interview happened in August of 2015. He was not even referred to Officer Brauhau for the consideration of criminal prosecution until May of 2016. Nine months. What element of the 1326 crime did Officer Cruz not get a confession on? Your Honor, all the elements were covered. But that is true regardless of the stage at which this interview happened. The defense makes much of a purported temporal distinction between this case and Salgado and Rodriguez. That distinction does not hold water because the defendant faced criminal liability at either stage. Any time there was a deportation interview, prior to deportation,  another criminal offense, which is 1325. So the defendants in Salgado and Rodriguez and Lugo had all completed criminal offenses as well. Misdemeanor, illegal entry. Your Honor, criminal offenses. Misdemeanor, criminal, illegal entry cases. There is criminal exposure both at the illegal entry stage and at the illegal re-entry stage. And so whether Miranda attaches cannot be made to turn on the happenstance of whether one criminal charge or another is ultimately brought. Do they still not do Miranda in these interviews today? Or has it changed? Or is that, I mean, it's maybe not in the record. I'm just, it's a matter of curiosity. Is this? The record isn't explicit on that point, Your Honor. My understanding is no. And I think there was a question asked earlier about what is it from Miranda that's missing here? This individual is told that he has the right to remain silent. The Sixth Amendment. Absolutely, Your Honor. This case, at bottom, is really about the right to appointed counsel. And the consequence of the defendant's rule would be to guarantee appointed counsel in hundreds of thousands of civil administrative proceedings that take place in this country every single year. Not if the ICE agent doing the booking says, you can leave. Your Honor, this agent went way out of his way to make this interview non-custodial. Why is he given these first two rights? Because the agent is trying to clearly communicate, you don't have to talk to me. The district court at the end of that colloquy expressly asks Agent Cruz, do you ever have people who don't want to talk to you? Yes. What happens? Nothing. We base our investigation on other facts. Do you have any ability to coerce or punish them? No. And at the beginning, the court was quite startled the government needed to rely on this at all. And said, you're close to reversal. We'll see what the Fifth Circuit does. Why are you using an ICE booking statement to be your proof of a federal felony offense? That was the district court's observation to the government. That's clearly not the bottom line of the district court's holding after the testimony's been elicited. Is that correct? It said, and then Cruz says, I do thousands of these and I've never testified in a criminal case. So what the government, not pretext, the government just now, if we were to hold the way you're asking us to, 1326 prosecutions would always just stand on the confession from the person who wasn't Mirandized. Absolutely not, your honor. Why not? Because the inquiry in every case has to be about the specific facts, the specific context of the interview. And so in a situation, for example, Mata Abundes, I think is a great example out of the Ninth Circuit that Salgado distinguishes. Salgado says, this is not like the case where an IRS agent shows up, talks to an inmate who's already in jail on an immigration offense, comes back three hours later with a warrant. Because on those facts, there was clearly criminal prosecution that was already contemplated. Counsel, I'm confused in a related question.  that this was harmless. Can you not have just relied on the CNR? We could have, your honor. And there are... But you're not urging us to find this was harmless error in any way. The issue of harmlessness was not briefed as to Miranda. So you... I do think that the record supports it because your honor is absolutely right. But you didn't brief it. Y'all are good lawyers. Y'all do this every day. So you didn't make a harmlessness off. That's correct, your honor. And in candor, the reason for that is in part because of the way that rebuttal came in before the jury. We thought that was the most prudent course. Okay. But in an ordinary case, can you just rely on the CNR? These goes to the questions that Judge Higginson's been asking you. Why do you need this custodial interrogation situation, whether it's interrogation or not? You're bringing in two things, both of which have some possible flaws. And so why... What's the normal course of action? One of these cases. Your honor, my understanding is that in the normal course, in the handful of cases that do go to trial, it is often the case that the CNR is put forward as proof of the absence of permission by the attorney general for a defendant to reenter the country. That's certainly... Was there some flaw in the CNR here? What was the decision to jeopardize this case in this way? If that's the normal course of action to just put in the CNR, what was it? Is it kind of the... There's an old Texas adage about court when you try to go too far and it's about you don't need something, but you push for it and then it messes up everything. It's more colorful than that, but I won't share it. What's going on with that? I certainly take your honor's point. I agree that the statement that Officer Cruz elicited was not necessary to the conviction. I think the court has the ability to find that any error was harmless. To Judge Higginson's point about Officer Cruz's testimony regarding his work history, I think that testimony, your honor, actually goes directly to the question of whether this is a pretext or any sort of systemic flaw in the system. In 10 years as a deportation officer, this was the first time that he'd ever testified in court. Right. But I'm just going to interrupt you because we would be the first circuit that then at a circuit level would say, when the ICE booking, which has no criminal purpose, happens after the alien has re-entered illegally and that ICE agent has picked up every supporting document and the defendant then swears to it in a jail, brought in, that's all you need. We would be the first circuit that would say, even there, no Miranda. You're getting a confession to everything, no Miranda. Your honor, clearly applying, both the second circuit and the ninth circuit on these facts would lead to the same conclusion. Your honor is correct. Those questions before he left. Those cases did involve earlier interviews. Lugo, however, did not. And Lugo is the case that Judge Godby, I think correctly said, is most on point with these facts. That's a district court opinion. It is, your honor. We have no circuit that has yet said what you're asking us to say. I'm not saying pretext or anything. I'm just saying we write that decision and the government hereafter will say, great booking agents, puss, they prove the 1326. Not at all, your honor. The fact specific nature of the inquiry remains. OK, well, that's my question. When you say the fact specific, it didn't help in the brief when you said, well, it's a combination of the two prongs. You tell me which of the two prongs is more solid. Which of the two would you tell me is more solid that there was no Miranda? No custody or no interrogation? I think the government wins on both. OK, I asked you, which do you think is more? It would seem to me the custody record is very ill presented. You didn't argue below, did you? We did not brief Schatzer in house below, your honor. You didn't argue to the court below that he wasn't in custody. We argued custodial interrogation as an umbrella term. Your honor is correct that we did not press it as a separate prong. OK, so I would think the better prong to be pushing is the one you argued below and one on, which is it's not interrogation. And and what is your best circuit case that this wasn't interrogation? Your honor, Salgado and Rodriguez are the cases that are on point, and your honor is correct that those are. There is a temporal distinction, but it is not a meaningful temporal distinction because there was still criminal exposure at either stage. But an agent wouldn't think the answers being given are reasonably likely to commit to convict for a crime that hasn't yet happened. They're interviewing people before they're deported. Of course, US agents would think they're not going to break another law and come back. They're going to answer. We'll never see agents assume people are lawful. It's a completely different scenario when the agent goes to them in jail afterwards. You're here and I've assembled every element of the crime. I'm going to get you to swear to it, but I'm not going to ask you. I'm not going to Mirandize you and say, watch out. You could be convicted by your own words now. That's totally different. Respectfully, Your Honor, it's not. If I could briefly pivot to the Confrontation Clause question in the time that I have remaining, we think there was no Confrontation Clause error, certainly no plain error because the officer who signed the Certificate of Non-Existence is the one who testified. Melendez-Diaz held that the analyst who swore the affidavits  subject to confrontation. And that is the process that was followed here. Officer Dobbins signed the certificate. She personally looked at the entire A file. She looked at the printouts. She certified and she testified about that certification. If she hadn't looked, but she still had signed, what's the government's position? Signing is the magic step? No, Your Honor. I think her personal involvement in reviewing the records at issue is clearly a critical piece under both Melendez-Diaz and Bolkoming. To the extent that the court thinks there is any ambiguity in that record, we would submit that the reason for that ambiguity is because there were no questions asked of that witness below. And under this court's decision, Rose, there cannot be a plain error on that record. Unless the court has further questions, we would rest on our briefing as to the remaining issues in the case. Ask this court just to recall on Miranda the consequences of the rule that the defendant asked this court to adopt for the very first time. I would ask this court to affirm. What do you mean the consequences? I'm sorry, that was a unique statement that just jumped out. It wasn't the normal, please affirm. Your Honor, I think, again, the limiting principle that counsel offered, if I understood correctly, when asked directly, what is it that would prevent all of the thousands of interviews that ICE conducts in the administrative context every year from turning into guarantees to appointed counsel? He said, well, in the ordinary course, in the booking process, you won't be in custody. There will be no consequences if he just does what he's done for thousands of times, never testified in a criminal court. No consequence. He sticks to the job he's always done. Likewise, no consequence if the government pushes on custody, which seems to me as simple as possible. You just tell a person, guess what? You can go back to general population. No consequence. You have no custody. You can offer the statement. Respectfully, Your Honor, in any administrative context where these thousands of interviews happen every single week, if the defendant is told not just the two things he was told here, but he's also told, you have a right to appointed counsel before you talk to me about whether you are eligible to be deported from this country. And the defendant says, that's a good idea. I'd like to have appointed counsel at the deportation stage. What happens at that point? Do we go to a magistrate judge? That's only if you want to use it. If you don't want to use it, then the ball is in the government's court. I think we understand your argument, counsel. Thank you very much. Thank you, Your Honor. On consequences, even if there were a Miranda violation, if your client takes the stand, they can use it to impeach, correct? That's certainly true, yeah. For impeachment purposes. But that's a critical decision. Okay, go ahead. Your Honor, I'd like to respond to four points, if I can. I'm going to try to take them in order of importance. First on this notion that it would somehow bog down the system. A person is not entitled to appointed counsel every time they invoke their Miranda rights in an interrogation. Counsel is going to be appointed at the arraignment after the indictment. What Miranda says is, you don't have to talk until you've had an opportunity to appoint a lawyer. What Miranda really says is, we need to inform you of your right of that. We're not going to see federal public defenders coming in in the middle of interrogations there any more than we do see in any other type of case, be it a station house interrogation or otherwise. Second, on the question of the district court's finding below, because the district court did make a finding of custody and relied primarily on a case that found custody, to affirm on the absence of custody, this court would have to find absence of custody as a matter of law. If it finds that the right of interrogation was violated, then it should remand for reconsideration before the court below. The government has cited as its strongest case United States versus Salgado before the Ninth Circuit in 2002. I urge this court to give a close, careful reading of Salgado. Salgado is not on point. In fact, it demonstrates exactly what should have happened in this case. In Salgado, we see three different officers appear. We see the officer that interviewed Mr. Salgado prior to his original deportation. Then he chooses on his own volition to come back to the United States. He's arrested. He's asked questions, routine booking questions when he's first brought in. And then he meets the third officer is the one that comes and interviews him just like Agent Cruz did here. The argument Mr. Salgado made in United States versus Salgado is I want to suppress the conversations to the first two officers. The reason he didn't try to suppress the interview with the officer just like we see Agent Cruz here is because that officer read in his Miranda rights and he stopped the investigation invoking his right to counsel before answering those types of questions. He wasn't given a counsel right then, but he was given a right to stop the interrogation. So Salgado shows what should have happened here. It certainly doesn't support the government's position. An important point here, there was a question regarding confrontation. This third person that searched the databases didn't actually sign the certificate of non-existence. Well, both Crawford and Bullcoming discuss that possibility. And both of them state very clearly, it's footnote three in Crawford, that the lack of a signature is not going to erase a confrontation clause problem because that would be too easy of a workaround for the government. Likewise, on Miranda, saying that, oh, I didn't refer the case for prosecution, but my direct supervisor did, would be a very convenient, and I say that somewhat cynically, workaround for the Department of Homeland Security to not ever have to Mirandize anyone prior to asking incriminating questions. On Miranda, if we affirm the district court that you don't need Miranda in these situations, would that create a split with any circuit? No. If we reverse the district court and said you do have to Mirandize in these facts, would that create a split? It would not. It would not be intentioned with the cases cited, and I think it would be intentioned, by the way, with the Supreme Court in Mathis versus United States, which presents a very similar situation. And the Supreme Court said you have to have Miranda here. I'd like to briefly respond to a comment you made, Judge Elrod. Is this happening now? Certainly, perhaps one of the implications there is we have a zero tolerance policy on immigration offenses. We're going to see these, perhaps, always lead to criminal prosecution. I wonder if that should change the way the government views it. I believe the government said we're still not Mirandizing these people. 30% of all prosecutions in the Fifth Circuit are illegal reentry. For these reasons, we ask this court to reverse and remand. Thank you, Your Honor. Thank you. We have your argument. That concludes the